IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MICHAEL HARPER**, )
)
    Petitioner, )
)
V. ) Civil No. **06-724-JPG-CJP**
)
**TERRY McCANN**, )
)
    Respondent, )

### REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

    Before the Court is petitioner Michael Harper's petition for writ of habeas corpus **(Doc. 1)**; respondent Terry McCann's answer and relevant documentation **(Doc. 16)**; and petitioner's retort **(Doc. 29)**, which is captioned "Motion to Rule on Petitioner's Petition for Writ of Habeas Corpus." This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

    Petitioner Michael Harper is currently incarcerated at Tamms Correctional Center, serving a "natural life" sentence for multiple murders, along with a concurrent seven year sentence for arson, both imposed in 1994. **(Doc. 16-2, p. 8).** Harper filed the subject petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, taking issue with a disciplinary conviction for which he was placed in segregation, lost good conduct credit and was denied assorted privileges– all for a period of one year. **(Doc. 1).** Petitioner, who is indisputably a leader within the Mickey Cobra gang, was disciplined for engaging in gang activity, in that a letter he wrote to Valerie "Lil Sis" Holmes directed Holmes to contact "Hollywood," who prison officials

1

identified as another leader in the Mickey Cobra gang.  (*See* **Doc. 16-10pp. 1-6[1]**).

Petitioner contends he was denied due process, in that: (1) his purported request to present the letter at issue and Correctional Officer Etheridge, who wrote the disciplinary report, as a witness at the disciplinary hearing were denied; and (2) that there was insufficient evidence from which to conclude the letter was referring to a Mickey Cobra gang member.  According to petitioner, the letter itself proves that there was no gang activity and no name that identifies a Mickey Cobra gang member, and Correctional Officer Etheridge would testify that the letter only contains the nickname "Hollywood." Petitioner also takes issue with the stated rationale for withholding names within the Adjustment Committee Report due to security concerns.  And, petitioner argues that there is an insufficient basis for concluding "Hollywood" was a gang member.

The petition contains many arguments regarding multiple respondents, whom the Court previously dismissed because the warden with custody of the petitioner is the only proper respondent to a Section 2254 petition.  **(Doc. 9).**  This Court notes that the bulk of Harper's arguments in the petition and his subsequent pleadings are better suited to a civil rights action under 42 U.S.C. § 1983 and cannot be considered by the Court within the parameters of Section 2254.  ***Preiser v. Rodriguez*, 411 U.S. 475, 482, 487-489 (1973);** *see also Pischke v. Litscher*, **178 F.3d 497, 500 (7th Cir. 1999).**  Accordingly, the Court need only concern itself with

---

[1] *Harper v. Velasco*, No. 4-04-0445, (Ill.App. 4th Dist., Feb. 17, 2005), contains a recitation of the relevant facts, which has not been disputed by petitioner; therefore the Court presumes those facts are correct for purposes of its habeas review. ***See* 28 U.S.C. § 2254(e)(1);** *see also Daniels v. Knight*, **476 F.3d 426, 434 (7th Cir. 2007).** For the convenience of the Court, citations will be to the docket entry in this action.

petitioner's due process arguments and analysis within the narrow scope of review prescribed by Section 2254.

## The Standard of Review

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), habeas relief may be granted if the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" In *Williams v. Taylor*, 529 U.S. 362, 405, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court explained that a state court decision is "contrary to" Supreme Court precedent if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. An unreasonable application of Supreme Court precedent occurs when "the state court unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle ... to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." To be unreasonable, the decision of the state court must not be simply incorrect or erroneous, it must have been "objectively unreasonable." *Wiggins v. Smith*, --- U.S. ----, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

*Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003).

## Entitlement to Relief Under 28 U.S.C. § 2254

As noted above, this action was specifically brought pursuant to 28 U.S.C. § 2254, not 42 U.S.C. § 1983. In *Preiser v. Rodriguez*, 411 U.S. 475, 482, 487-489 (1973), the Supreme Court explained that 28 U.S.C. § 2254 was the appropriate mechanism when the fact or duration of confinement is challenged and either immediate release or the shortening of the term of confinement is sought– specifically addressing good time credits. In *Wilkinson v. Dotson*, 544 U.S. 74, 78-83 (2005), the high court held that a challenge to regulations that would lead to a speedier parole hearing offered only the *possibility* of a shorter sentence or immediate release, therefore falling outside of the core of habeas relief, but within the ambit of 42 U.S.C. § 1983.

3

Nevertheless, respondent contends that the particular circumstances of petitioner's sentence do not entitle petitioner to habeas relief because the disputed good conduct credits cannot shorten the duration of his confinement, as he is serving a natural life sentence. Respondent does not cite any cases that specifically have declared that Section 2254 is inapplicable in such a scenario, or that no relief is appropriate, or that any claim to relief should be deemed moot. Rather, respondent cobbles together snippets of dicta, many taken out of context. With that said, in *Sylvester v. Hanks*, 140 F.3d 713, 714 (7th Cir. 1998), the Court of Appeals for the Seventh Circuit recognized that the procedural differences between Sections 2254 and 1983 are important, impacting the applicability of the Prison Litigation Reform Act, and the need for a certificate of appealability, among other things.

This Court's research of the law applicable at the time of the offense and at the time of conviction reveals that Ill.Rev.Stat. Ch. 38, § 1003-6-3(a)(2) (WEST 1988 and 1994) prohibits the accumulation of good conduct credit where a sentence of natural life has been imposed. ***See also* the unpublished decision in *Granberry v. People of State of Illinois*, 215 F.3d 1329 (7th Cir. 2000).** Although respondent does not address why petitioner would be receiving good time credit if he was not entitled to it, this Court surmises that respondent has simply ignored petitioner's concurrent seven-year sentence, which is eligible for good time credit. This Court surmises that the seven year sentence expired in 2000, but there is simply no evidence in the record to that effect. Nevertheless, there is no explanation as to why petitioner was receiving good conduct credit, and any incongruity regarding the appropriateness of accruing good time credits is a matter for the Illinois courts. With these considerations unaddressed, the Court is left to conclude that petitioner was, for some reason, entitled to good conduct credits. Therefore, this

4

argument for dismissal fails.

## Procedural Prerequisites

As a preliminary matter, it must be understood that petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. **Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995).** Respondent contends that petitioner has procedurally defaulted his claim that he was precluded from calling Correctional Officer Etheridge as a witness.

### A. Exhaustion

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." **O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).** "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." **Id.**; *see also* **28 U.S.C. § 2254(c).** In *O'Sullivan v. Boerckel* the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). **O'Sullivan, 526 U.S. at 843-846.**

Respondent does not dispute that petitioner has exhausted all available avenues of relief through the State system, in that his case ran the full course of the state two-tiered appellate process. (***See*** **Docs 16-10 and 16-12).** Thus, petitioner has cleared the first procedural hurdle, exhaustion.

5

### B. Procedural Default

"[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 842. More to the point, the "fair presentment" doctrine requires that a petitioner give state courts a meaningful opportunity to pass upon the substance of the claims later pressed in federal court. *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999). For a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted. *Picard v. Connor*, 404 U.S. 270, 277 (1971). "At bottom, the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."

***Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992).**

There is a second way a claim may be procedurally defaulted– "[i]n general, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" ***Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997) (*citing Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).** In the habeas context, this doctrine applies to bar consideration of any of a petitioner's federal claims which a state court declined to address because the petitioner failed to meet a state procedural requirement. ***See Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).** To be an adequate ground of decision, the state's procedural rule must be both "firmly established and regularly followed." ***Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984); *see also Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).** In order for this doctrine to apply, the last state court rendering judgment must rest its judgment on procedural default and make a plain statement that it was relying either alone, or in the alternative, on the state procedural bar. ***Harris v. Reed*, 489**

6

U.S. 255, 265 (1989).

A petitioner can circumvent this bar to review if he is able to demonstrate cause for the procedural error and establish prejudice resulting from that error. *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999); and *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The cause must be an external factor. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Absent a specific showing of cause and prejudice, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 748. This exception requires a colorable claim of actual innocence as well as an allegation of a constitutional wrong. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Dellinger v. Bowen,* 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Respondent contends that petitioner has procedurally defaulted his claim that he was precluded from calling Correctional Officer Etheridge as a witness. Citing state case law regarding the "waiver rule," the state appellate court found that claim had been procedurally forfeited– waived– because at the institutional level (meaning in Administrative Review Board proceedings and/or within the grievance system) petitioner had not objected to the statement in the Adjustment Committee Report that indicated plaintiff had not asked to call any witnesses. (*See* Doc. 16-10, pp. 11-12). Petitioner does not specifically address the issue of procedural default.

7

In *Miranda v. Leibach*, 394 F.3d 984, 991-996(7th Cir. 2005), the Court of Appeals for the Seventh Circuit ruled that the Illinois waiver rule, despite varying and inconsistent application in the state courts, is "solidly established." "The ongoing inconsistency might be explained by the principle, often recognized in Illinois cases, that waiver binds the parties but not the courts." *Id.* **at 994.** It was explained that to fail the adequacy test, a rule must be invoked "'infrequently, unexpectedly, or freakishly.'" *Id.* **at 995 (quoting *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990)).** Petitioner has not presented any additional arguments sufficient to cause this Court to diverge from the holding in *Miranda v. Leibach*. Furthermore, petitioner has failed to argue, let alone establish, cause and prejudice for his procedural default. Therefore, the issue of whether petitioner was denied his right to call Correctional Officer Etheridge as a witness has been procedurally defaulted and should not be addressed by the Court.

Although this Court considers the issue regarding Correctional Officer Etheridge to have been defaulted, for the District Court's benefit the merits of this issue will be analyzed below, along with petitioner's other issues.

## **Merits Analysis**

The Supreme Court has held that "[w]here a prison disciplinary hearing may result in the loss of good time credits, ... the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity ... to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." ***Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 454 (1985).** However, prison disciplinary hearings– particularly with respect to the calling

of witnesses– are to be conducted consistent with institutional safety and correctional goals.[2] *Wolff v. McDonnell,* 418 U.S. 539, 563-567 (1974); *Henderson v. United States Parole Commission,* 13 F.3d 1073, 1077 (7th Cir. 1994). At bottom, "the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits." *Hill,* 472 U.S. at 455 **(emphasis added).**

As previously noted, the Court presumes the facts set forth in the appellate record are correct for purposes of this habeas review. *See* **28 U.S.C. § 2254(e)(1);** *see also Daniels v. Knight*, **476 F.3d 426, 434 (7th Cir. 2007).** According to the appellate court order:

> As the basis for its decision, the committee stated in part, as follows:
>
>> "in the contents of the letter[,] the inmate (who is a known leader of the Mickey Cobra STG [security threat group]) instructs Ms. Holmes to tell Simyra (who is a friend of a paroled inmate who has been identified as a leader within the Four Corner Hustler STG) that she (Ms. Holmes) needs to talk to 'Paroled Inmate' (who is identified as a paroled inmate and also a leader within the Mickey Cobra STG) and to tell Hollywood to extend his arm to him ([plaintiff]) as [plaintiff] had previously done for him when his (Hollywood['s]) mother was having problems, [and] that the inmate was attempting to use his influence within the Mickey Cobra STG to solicit leaders of [s]ecurity [t]hreat [g]roups in an effort to assist his family resolve a potentially dangerous problem."
>
> As reasons for finding plaintiff guilty, the report indicated plaintiff did not deny writing the letter, the committee reviewed the letter, internal affairs confirmed plaintiff was a member of the Mickey Cobra gang, and internal affairs clarified "Hollywood" was a known leader within the Mickey Cobra gang.

---

[2]It should also be noted that the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution**.** *Maust v. Headley,* **959 F.2d 644, 648 (7th Cir. 1992);** *Shango v. Jurich,* **681 F.2d 1091 (7th Cir. 1982).**

9

**(Doc. 16-10, pp. 4-5).**

### The Letter

The state appellate court, citing the standards set forth in *Wolff v. McDonnell* and consistent state case law and administrative procedures, recognized that the letter that petitioner desired to present *had* been reviewed by the committee, which had confirmed its wording, including the fact that the only name in the letter was "Hollywood." The letter was in evidence, so petitioner's request to submit the letter was redundant and/or moot. In any event, prison authorities ordinarily must give some explanation when they do not produce requested materials, but an inadequate or nonexistent explanation does not offend the Constitution if the requested evidence would be repetitive or irrelevant to the charges brought against the prisoner. ***See Ponte v. Real*, 471 U.S. 491, 496-497 (1985)*; Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992); *Miller v. Duckworth*, 963 F.2d 1002, 1004-1005 (7th Cir.1992).**

### Correctional Officer Etheridge

Similarly, Correctional Officer Ethridge's testimony, by petitioner's own admission, would merely serve to confirm that the letter only contains the nickname "Hollywood," which the Adjustment Committee could and did see when the letter was reviewed. Therefore, if the District Court does not deem petitioner's argument regarding Ethridge not being brought as a witness to have been procedurally forfeited, the Court should conclude that there was no denial of due process because Ethridge's testimony would have merely confirmed the contents of the letter, which was reviewed by the Adjustment Committee.

### The Adjustment Committee's Statement of Evidence

An inmate subjected to discipline is entitled to a written statement of the reasons and

evidence relied on in his conviction. *See Wolff v. McDonnell*, 418 U.S. 539, 564-565 (1974).
Although respondent does not specifically recognize the issue, petitioner clearly has raised the issue of the sufficiency of the Adjustment Committee's statement of evidence and its rationale for concluding that "Hollywood" was a gang member and that the directives regarding Hollywood in the letter constituted gang activity. This issue was pursued through the two-tier state appellate process and decided on the merits, so it is properly before the Court. **(Doc. 16-10, pp. 9-10; Doc. 16-11).** According to the state appellate court:

> The committee stated it reviewed the letter, obtained confirmation from internal affairs that plaintiff and "Hollywood" were known leaders within the Mickey Cobra gang, and found plaintiff was attempting to use his influence within the gang to solicit other gang leaders. The committee also indicated the names of the individuals were withheld for safety and security reasons to keep the names from being circulated.

**(Doc. 16-10, pp. 9-10).** The appellate court concluded that the committee's statement of reasons for its decision were sufficient to enable review and satisfied due process requirements. **(Doc. 16-10, p. 10).**

> With respect to security issues, the Supreme Court has stated:
>
> [T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call

> witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. *Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.*

***Wolff v. McDonnell*, 418 U.S. 539, 566 (U.S. 1974) (emphasis added).** The Adjustment Committee's statement does state that names were omitted from the report "for safety and security reasons to keep the names from being circulated." The explanation is therefore sufficient under *Wolff* and is not, in and of itself, a constitutional violation. that petitioner and "Hollywood" were known leaders within the Mickey Cobra gang, and that Simyra was a link between gang members.

Petitioner's arguments regarding the omitted names and the statement of reasons are essentially claims regarding the sufficiency of the evidence. However, the Supreme Court has held that due process requires that the findings of the disciplinary tribunal need be supported only by *some evidence* in the record. ***Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).** Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant and narrow question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. ***Hill*, 472 U.S. at 455-56.**

Petitioner does not deny that he wrote the letter, or what is stated in the letter. Petitioner does not dispute that he is a gang leader. He does not contest the fact that internal affairs identified "Hollywood" as a gang member. Rather, petitioner essentially argues that he could have been referring to someone else nicknamed "Hollywood," and he takes issue with the self-

sustaining, "bootstrappping" method of proof used to convict him.

The "some evidence" standard is satisfied if there was any evidence to support the finding of guilt. ***Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).** Prison disciplinary boards may receive and act on information withheld from the inmate. ***White v. Indiana Parole Board*, 266 F.3d 759, 767 (7th Cir. 2001); *Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995).** And, because the assessment of credibility is not this Court's prerogative, the internal affairs identifications constitute some evidence in support of the ultimate conclusion that the letter written by petitioner was the attempt of one gang leader to call in a favor from another gang leader. Knowing that petitioner and "Hollywood" are gang leaders, it is reasonable to read the otherwise cryptic letter and reach the conclusion that petitioner was engaging in gang activity. Although petitioner took issue with the committee's conclusion, the facts are undisputed, and the appellate court's analysis was based on, and was entirely consistent with, the aforementioned legal precedents; therefore, habeas relief is not warranted.

## Recommendation

For the aforementioned reasons, it is the recommendation of this Court that petitioner Michael Harper's petition for writ of habeas corpus be denied in all respects and that judgment enter accordingly.

**DATED:  August 19, 2009**

                                         **s/ Clifford J. Proud**
                                         **CLIFFORD J. PROUD**
                                         **U. S. MAGISTRATE JUDGE**

## Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **September 4, 2009**. No extensions will be granted.